IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:19-CR-13-RP |
| KYLE GERALD PRALL, | § § § | |
| Defendant. | § | |

**ORDER**

Before the Court is Defendant Kyle Gerald Prall's Motion to Dismiss the Indictment, (Mot., Dkt. 19), or in the alternative, a Motion to Dismiss Counts 15 Through 20 of the Indictment, (2d Mot., Dkt. 20). The parties filed responsive briefing. (Resp., Dkt. 21; Reply, Dkt. 24). Having reviewed the briefing, the record, and the applicable law, the Court will deny both motions.

**I. BACKGROUND**

The indictment alleges that during the 2016 presidential election cycle, Kyle Gerald Prall ("Defendant" or "Prall") solicited contributions from the general public for multiple political committees, including Feel Bern, HC4President, and Trump Victory, based on misrepresentations that the money contributed by donors would be used to support candidates for the Office of the President of the United States. (Indictment, Dkt. 3, ¶ 12). Instead, Prall transferred donors' contributions to his personal accounts and used the funds for purely personal expenditures unrelated to the political committees. (*Id.* ¶¶ 20–21). In furtherance of this scheme, the indictment alleges that Prall used HC4President committee funds for hotels in Austin and Miami, alcohol, hookah, bottle service, "club dances performed by entertainers," massage, and pet-cleaning fees, (*id.* ¶ 27); that he falsely informed the treasurer of Feel Bern that that these were legitimate political committee expenditures for "meals and entertainment," knowing they would be falsely reported to

1

the Federal Election Commission (FEC), (*id.* ¶ 28); that he diverted over $40,000 from HC4President to his personal account and used the committee debit card for personal travel to Jacksonville, Dallas, and Belize, (*id.* ¶ 32–33); that he falsely informed the bookkeeper of HC4President that some of these were legitimate "travel expenses," knowing they would be falsely reported to the FEC, (*id.* ¶ 34), that he transferred over $72,000 from Trump Victory committee to his personal account, (*id.* ¶ 38); and that he used the committee debit card to withdraw $100 cash from a restaurant and bar ATM in Port Aransas, and then falsely informed the Trump Victory bookkeeper that the cash withdrawal was a legitimate expense for Google AdWords, knowing it would be falsely reported to the FEC, (*id.* ¶ 40). Finally, the indictment alleges that Prall wrote checks from Feel Bern to himself in the amounts of $130,000 and $20,000. (*Id.* ¶ 40).

Based on these allegations, the indictment charges Prall with three counts of mail fraud in violation of 18 U.S.C. § 1341, three counts of wire fraud in violation of 18 U.S.C. § 1343, six counts of money laundering in violation of 18 U.S.C. § 1956, two counts of money laundering in violation of 18 U.S.C. § 1957, three counts of false statements in violation of 18 U.S.C. § 1001(a)(2), and three counts of falsification of records in violation of 18 U.S.C. § 1519. (Indictment, Dkt. 3, ¶¶ 46–65).

Prall asks the Court to dismiss the indictment pending against him for two reasons. First, Prall contends that the Government charged him incorrectly. He asserts that for allegations of fraudulent solicitation and reporting of political campaign funds, the Federal Election Campaign Act (FEC)[1] preempts the Title 18 charges in the indictment. (Mot., Dkt. 19). Second and alternatively, Prall seeks dismissal of Counts 15 through 20 of in the Indictment, which charge him with submitting false statements under 18 U.S.C. § 1011(a)(2) and false records under 18 U.S.C. § 1519. (2d Mot., Dkt. 20). The Government counters that the indictment correctly and sufficiently charges Prall with "a straightforward fraud scheme." (Resp., Dkt. 21, at 3).

---

[1] 52 U.S.C. § 30101 et seq.

## II. LEGAL STANDARD

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1). The purpose of an indictment is "to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding." *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (citing *United States v. Morrow*, 177 F.3d 272, 296 (5th Cir. 1999)). An indictment is sufficient if it "contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend." *Id.* (quoting *United States v. Graves*, 669 F.2d 964, 968 (5th Cir. 1982)). Considering the sufficiency of an indictment, a court must "take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (quoting *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).

## III. PREEMPTION

"It is well settled that 'when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants.'" *United States v. Hopkins*, 916 F.2d 207, 218 (5th Cir. 1990) (quoting *United States v. Batchelder*, 442 U.S. 114, 123–24 (1979)). "The only exception arises where Congress clearly intended that one statute supplant another." *Id.*

When two federal statutes conflict, "[t]he cardinal rule is that repeals by implication are not favored." *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503 (1936). "Where there are two acts upon the same subject, effect should be given to both if possible." *Id.* The Supreme Court has held that "[t]here are two well-settled categories of repeals by implication: (1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is

clearly intended as a substitute, it will operate similarly as a repeal of the earlier act." *Id.* "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 190 (1978) (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974)).

In his first motion, Prall argues that the indictment must be dismissed because FECA preempts Title 18 offenses for fraudulent solicitation or reporting of political funds. (Mot., Dkt. 19). His argument has two components. First, Prall contends that FECA governs "the precise alleged conduct": "receiving, or reporting of any contribution, donation, or expenditure" under 52 U.S.C. § 30109 and the "fraudulent solicitation of [political] funds" under 52 U.S.C. § 30124. (Mot., Dkt. 19, at 1; *see id.* at 17–20). Second, Prall asserts that Congress tailored the FECA to "govern the constitutionally sensitive area of political speech and disclosure" and preempt "broad, catch-all criminal statutes." (Mot., Dkt. 19, at 10; *see id.* at 11–17). Therefore, he argues, charging him under any statute other than FECA violates the First Amendment. (*See id.* at 28–31). As he argues: "Laws as broad and amorphous as the wire and mail fraud statues, the false statement statute, and § 1519 are not sufficiently tailored to avoid chilling political speech." (*Id.* at 28)

Prall's preemption argument relies on a misreading of the Federal Election Campaign Act. He argues that the Government should have charged him under § 30109 and § 30124 of the Act, but neither provision governs his alleged conduct. § 30109 is a penalty provision that does not prohibit any specific criminal offense.[2] Likewise, § 30124 provides that (a) any "candidate for federal office,"

---

[2] Prall asserts that § 30109 "sets forth a criminal statute specifically governing the 'making, receiving, or reporting of any contribution, donation, or expenditure' in violation of the federal election laws." (Mot., Dkt. 19, at 13 (citing 52 U.S.C. § 30109)). But this is only a partial quotation from the statute. The provision reads in full: "(A) Any person who knowingly and willfully commits a violation of any provision of this Act which involves the making, receiving, or reporting of any contribution, donation, or expenditure (i) aggregating $25,000 or more during a calendar year shall be fined under Title 18, or imprisoned for not more than 5 years, or both; or (ii) aggregating $2,000 or more (but less than $25,000) during a calendar year shall be fined under such title, or imprisoned for not more than 1 year, or both. . . . (C) In the case of a knowing and willful violation of section 30124 of this title, the penalties set forth in this subsection shall apply without regard to

4

or their agent, shall not fraudulently misrepresent that they are acting on behalf of a different candidate or political party in a way that is damaging to the other candidate or party, and (b) any person shall not fraudulently misrepresent that they are acting "on behalf of any candidate or political party," or their agent, "for the purpose of soliciting contributions or donations."[3] Prall is incorrect that § 30124 "specifically governs fraudulent misrepresentations and solicitations of funds." (*See* Mot., Dkt. 19, at 15). The statute does not govern "fraudulent misrepresentations and solicitations of funds" generally; it governs fraudulent misrepresentation of campaign authority. The Government could not have charged Prall under § 30124 (or the penalty provision at § 30109) for his alleged conduct in this case.

Further, the Court finds in the text of the FECA "no affirmative showing of an intention to repeal" any other criminal statute and no indication that the FECA is "irreconcilable" with any of the wire and mail fraud statutes charged. *See* 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1956 (money laundering); and 18 U.S.C. § 1957 (money laundering). Additionally, even if the Title 18 provisions governing false statements under 18 U.S.C. § 1001(a)(2) and falsification of records under 18 U.S.C. § 1519 overlap in part with FECA's reporting requirements under 52 U.S.C. § 30104(b), "[t]he offenses under Title 18 thus stand wholly apart and separate from any violation of the federal election laws." *Hopkins*, 916 F.2d at 219 (rejecting argument that convictions under Title 18 for fraud, concealment, and misapplication of funds were

---

whether the making, receiving, or reporting of a contribution or expenditure of $1,000 or more is involved." 52 U.S.C. § 30109(A), (C).

[3] Subsection (a) provides: "No person *who is a candidate for Federal office or an employee or agent of such a candidate* shall (1) *fraudulently misrepresent himself or any committee or organization under his control* as . . . acting for or on behalf of any other candidate or political party or employee or agent thereof on a matter which is damaging to [them] . . ." 52 U.S.C. § 30124(a) (emphasis added). Subsection (b) provides: "No person shall . . . fraudulently misrepresent the person as . . . *acting for or on behalf of any candidate or political party or employee or agent thereof* for the purpose of soliciting contributions or donations," or "willfully and knowingly participate in or conspire to participate in any plan, scheme, or design" to do so. 52 U.S.C. § 30124(b) (emphasis added).

improper because the defendants should have been prosecuted only under the federal election laws). The Government is therefore correct that "preemption is not implicated." (*See* Resp., Dkt. 21, at 7).

Prall's preemption argument fails for a final and important reason: "the First Amendment does not shield fraud." *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). "[T]here is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974). Based on the facts alleged, the indictment poses no risk to constitutionally protected speech. For all of these reasons, the Court will deny Prall's first motion to dismiss the indictment.

## IV. COUNTS 15 THROUGH 20

Alternatively, in his second motion, Prall asks the Court to dismiss counts 15 through 20 of the indictment, which charge him with false statements in violation of 18 U.S.C. § 1001(a)(2) and falsification of records in violation of 18 U.S.C. § 1519. (2d Mot., Dkt. 20; Indictment, Dkt. 3, ¶¶ 54–65). In particular, Prall argues that these counts should be dismissed because (a) he had no duty to file FEC reports, (b) an intermediary filed the actual reports, not Prall himself, (c) the reported expenditures for "meals and entertainment" and "travel" were technically true, and therefore cannot support charges for false statements, (d) the alleged misstatements were not material, and (e) the rule of lenity applies to these charges. (2d Mot., Dkt. 20). The Court addresses each of these arguments in turn.

### A. Duty to File (Counts 15, 17, 19)

First, Prall argues that under FECA, only the designated treasurer of a political committee has a statutory duty to file a report with the Federal Election Commission. (*Id.* at 3). Prall was not the designated treasurer for Feel Bern or Trump Victory.[4] (*Id.* at 3). He contends that because he

---

[4] Prall does not raise this argument for the Counts 17 and 18 because he was designated as treasurer for HC4President. (2d. Mot, Dkt. 20, at 2 n.4).

6

had no such duty under FECA, the Government cannot charge him for making a materially false, fictitious, or fraudulent statement or representation to the government under 18 U.S.C. § 1001(a)(2).

Prall cannot import FECA standards into other statutes. The Government has no burden to prove a duty under the statutes charged. "Conviction under 1001(a)(1) requires proof that the defendant had a legal duty to disclose the fact concealed, while a conviction under 1001(a)(2) does not." *United States v. Kun Yun Jho*, 465 F. Supp. 2d 618, 637–38 (E.D. Tex. 2006), *rev'd sub nom. United States v. Jho*, 534 F.3d 398 (5th Cir. 2008). The indictment charges Prall under Subsection (a)(2). "The elements of a false statement offense are: (1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction." *United States v. Elashyi*, 554 F.3d 480, 497 (5th Cir. 2008) (citing *United States v. Leal*, 30 F.3d 577, 584 (5th Cir. 1994)) (cleaned up). Proof of a duty is not required.

### B. Reports Filed by an Intermediary (Counts 15, 16, 19, 20)

Next, Prall argues that "a false statement made to an intermediary, and not directly to the federal government, is not within the 'jurisdiction' of the government agency" for the purposes of 18 U.S.C. § 1001(a)(2) and 18 U.S.C. § 1519. (2d Mot., Dkt. 20, at 10–14). Fifth Circuit authority directly contradicts this argument. A person who willfully causes a treasurer of a political committee to submit materially false statements to the FEC may be liable for a § 1001 offense as a principal under 18 U.S.C. § 2(b). *See, e.g., Hopkins*, 916 F.2d at 215 (affirming conviction of defendants who deliberately caused political action committee treasurer to report false information to the FEC). "It is well-established that § 2(b) was designed to impose criminal liability on one who causes an intermediary to commit a criminal act, even though the intermediary who performed the act has no criminal intent and hence is innocent of the substantive crime charged." *Id.* (quoting *United States v. Tobon–Builes*, 706 F.2d 1092, 1099 (11th Cir. 1983)). "Aiding and abetting is not a separate offense, but it is an alternative charge in every indictment, whether explicit or implicit." *United States v. Neal*,

7

951 F.2d 630, 633 (5th Cir. 1992) (citing *United States v. Sanchez*, 917 F.2d 607 (1st Cir. 1990); *United States v. Gordon*, 812 F.2d 965 (5th Cir. 1987)).

Here, the Government charges that Prall caused the Feel Bern, HC4President, and Trump Victory political committees to submit false statements and false records to the FEC. (Indictment, Dkt. 3, ¶¶ 55, 57, 59, 61, 63, 65). Whether Prall personally filed the reports or caused an intermediary to do so does not alter the FEC's jurisdiction over the reports or his potential liability under 18 U.S.C. § 1001(a)(2) and 18 U.S.C. § 1519. *See Hopkins*, 916 F.2d at 215.

### C. "Technically True" Statements

Next, Prall contends that even if his reported expenditures had "a personal component," the expenditures for "meals and entertainment" and "travel" were "technically true" and therefore cannot support charges for false statements. (2d Mot., Dkt. 20, at 15–20). The Government responds that "any reported expenditure that did not affirmatively disclose its personal nature falsely asserted a legitimate connection to the respective political committee." (Resp., Dkt. 21, at 16). The Government also argues that the truth of Prall's statements is a question of fact for a jury. (*Id.* at 14).

As a general rule, a district court does not make determinations of fact when considering the sufficiency of an indictment. *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (citing *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005)). At this stage, the Court must "take the allegations of the indictment as true and to determine whether an offense has been stated." *Kay*, 359 F.3d at 742 (quoting *Hogue*, 132 F.3d at 1089). The indictment here charges that Prall caused three political committees to submit statements and records to the FEC that he knew were false because they were not political committee expenses at all—they were "purely personal and unrelated to the committee." (Indictment, Dkt. 3, ¶¶ 55, 57, 59, 61, 63, 65). This adequately states an offense under 18 U.S.C. § 1001(a)(2) and 18 U.S.C. § 1519. Prall may of course dispute the truth of these allegations before a jury.

8

### D. Materiality (Counts 15, 17, 19)

The Court reaches the same conclusion for Prall's materiality argument. He submits that some reported expenditures were for such small amounts that they were not material to the FEC's reporting regime. (2d Mot., Dkt. 20, at 20–22). For example, the indictment charges that he falsely reported a cash withdrawal for $103. (Indictment, Dkt. 3, at ¶ 63).

A conviction under 18 U.S.C. § 1001 requires the Government to prove materiality. *See United States v. Jara-Favela*, 686 F.3d 289, 301 (5th Cir. 2012). But the Government is not required to carry that burden in the indictment. "Whether a misstatement is material is generally an issue of fact for the jury to decide." *United States v. Harms*, 442 F.3d 367, 373 (5th Cir. 2006). "[U]nless no reasonable mind could find a statement or omission to be material, criminal trial must submit the issue to the jury." *Id.* (citing *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir.1998)); *see also United States v. Gaudin*, 515 U.S. 506, 511 (1995).

### E. The Rule of Lenity

The rule of lenity provides that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cleveland v. United States*, 531 U.S. 12, 25 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). Where the ambit of a criminal statute is ambiguous, "it is appropriate, before [a court] choose[s] the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Id.* (quoting U*nited States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 222 (1952)).

Prall argues that the rule of lenity applies in his case for two reasons. First, he contends that because 18 U.S.C. § 1519 and FECA impose different criminal penalties for similar conduct, the rule of lenity requires dismissal of the § 1519 charges, which would carry a longer sentence upon conviction. (2d Mot., Dkt. 20, at 25–27). Although the Fifth Circuit has not yet addressed this question, two other circuits have rejected similar arguments. *See United States v. Benton*, 890 F.3d 697,

711 (8th Cir. 2018) (rejecting the argument that FECA preempted enforcement under 18 U.S.C. § 1519); *United States v. Rowland*, 826 F.3d 100, 110 (2d Cir. 2016) (upholding application of 18 U.S.C. § 1519 to false reporting of campaign expenditures to the FEC). This reasoning is consistent with the Fifth Circuit's holding that "[t]he offenses under Title 18 thus stand wholly apart and separate from any violation of the federal election laws." *Hopkins*, 916 F.2d at 219 (rejecting argument that convictions under Title 18 for fraud, concealment, and misapplication of funds were improper because the defendants should have been prosecuted only under the federal election laws). *See supra*, Section III. In light of the Fifth Circuit's directive that Title 18 offenses and violations of federal election laws are wholly separate, the Court declines to find that the rule of lenity precludes prosecution under 18 U.S.C. § 1519 for false reporting of campaign expenditures.

Second, Prall argues that the rule of lenity applies because FECA's reporting requirements are overly vague in two ways: (a) FECA does not explicitly prohibit personal use of political committee funds, and (b) FECA requires classifying expenditures in one of 12 categories, none of which include "personal use." (*See* 2d Mot., Dkt. 20, at 15–20, 25–27). But Prall is not charged with incidental or occasional personal use of committee funds. The indictment charges that Prall reported thousands of dollars of political committee expenditures to the FEC that were in fact "purely personal and unrelated to the committee," (Indictment, Dkt. 3, ¶¶ 28, 34, 40, 55, 57, 59, 61, 63, 65), while transferring over $200,000 of the contributions to himself, (*see id.* at ¶¶ 25–27, 32–33, 38–39, 41–45; Resp., Dkt. 21, at 1). Taking the allegations in the indictment as true, the Court finds no ground to support Prall's argument that the FECA is so vague that his FEC reporting was somehow innocent or an "unsuccessful, good-faith attempt to accurately report." *Benton*, 890 F.3d at 710 (rejecting arguments that FECA reporting requirements were so vague or confusing that the court should either apply the rule of lenity or determine that criminal enforcement is not appropriate). The Court finds no grounds to apply the rule of lenity to dismiss any of the counts in the indictment.

## V. CONCLUSION

Accordingly, the Court **ORDERS** that Prall's Motion to Dismiss the Indictment, (Mot., Dkt. 19), is **DENIED**. Prall's alternative Motion to Dismiss Counts 15 Through 20 of the Indictment, (2d Mot., Dkt. 20), is also **DENIED**.

**SIGNED** on April 16, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE