<mark>Case 1:19-cr-00013-RP   Document 48-1   Filed 10/22/19   Page 1 of 2</mark>



U.S. Department of Justice

Criminal Division

*Public Integrity Section*                                                                                   *Washington, D.C. 20530*

August 1, 2019

<u>**VIA ELECTRONIC MAIL**</u>

| EXHIBIT A |
|---|

Russ Wiedenmeyer
Sr. U.S. Probation Officer
United States Probation Office
501 West 5th Street, Suite 2100
Austin, TX 78701

      Re:    *United States v. Kyle Gerald Prall*,
               A:19-CR-013 RP

Dear Mr. Wiedenmeyer:

      We have reviewed the draft Presentence Investigation Report (PSR) you filed on July 25, 2019, in the above matter. Pursuant to Federal Rule of Criminal Procedure 32(f) and Criminal Local Rule 32, the United States has the following objection:

      Paragraph 24 of the draft PSR states that defendant "will be held accountable for a total of $543,328 in loss/gain for a 12-level increase." This represents the total amount of the contributions to defendant's political committees ($548,428), less the actual political contributions made by defendant from those political committees (approximately $5,100). In the Plea Agreement, however, the parties agreed that defendant would be subject only to a 10-level increase for a loss greater than $150,000, but less than $250,000. *See* Plea Agreement at ¶3(c). More specifically, the parties agreed that the actual loss was not reasonably determinable in this case, and therefore, the gain to defendant—$205,496.68—should be used as an alternative measure of loss. Using the gain results in a 10-level increase, rather than a 12-level increase, pursuant to U.S.S.G. § 2B1.1.

      Pursuant to U.S.S.G. § 2B1.1, Application Note 3(B), "[t]he court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." The parties agree there was a loss here, but, under the standard of proof required by the Sentencing Guidelines, it cannot reasonably be determined. Although defendant made numerous misrepresentations on his websites about how he would use the contributions to his political committees, and he, in fact, used a significant portion of the contributions for illegitimate purposes such as his personal entertainment expenses, he also used some portion of the contributions for arguably legitimate political purposes as advertised on the websites. For example, defendant represented on the HC4President website, "We use online media, TV and radio advertising to educate the public on Hillary Clinton's experience and stances on the issues." Similar representations were made on the Feel Bern and Trump Victory websites. And,

in fact, defendant used some of the contributions to hire freelance writers to draft articles regarding the candidates' respective positions on various contested political issues (such as gun control, immigration, and criminal justice reform), which defendant then posted on the websites. Further, defendant used a significant portion of the contributions to pay for online advertising of his websites. Although this online advertising was likely for the purpose of increasing traffic to defendant's websites and thereby increasing contributions—and, in turn, defendant's profits—it also drove people to the arguably legitimate educational information about the candidates commissioned by defendant. In sum, it is difficult in this instance to separate the illegitimate expenditures from the legitimate for the purpose of determining "loss."

On the other hand, the gain—that which defendant routed through shell companies to his personal bank accounts—can be determined. That amount is $205,496.68, which the parties agree is a reasonable proxy for the loss amount in this case.

Furthermore, the use of different figures for "loss" under the Sentencing Guidelines and "restitution" pursuant to the Mandatory Victims Restitution Act (MVRA)—as the parties agreed here—is supported by the case law. As courts have recognized, the "'loss' for determining the offense level is different from the 'loss' for restitution purposes." *United States v. Bazemore*, 839 F.3d 379, 388 (5th Cir. 2016) (quoting Robert W. Haines, Jr. *et al.*, *Federal Sentencing Guidelines Handbook* 1556-57 (2015-2016 ed.)); *see also United States v. Nosal*, 844 F.3d 1024, 1046 (9th Cir. 2016) ("[C]alculating loss under the guidelines is not necessarily identical to loss calculation for purposes of restitution." (citations omitted)). Thus, "the amounts of loss and restitution can and do differ." *United States v. Patterson*, 595 F.3d 1324, 1327 (11th Cir. 2010); *see, e.g.*, *United States v. Hebron*, 684 F.3d 554, 561, 564 (5th Cir. 2012) (upholding a loss calculation of $320,000 and a restitution order for $105,600); *United States v. Crawley*, 533 F.3d 349, 355-59 (5th Cir. 2008) (upholding a restitution order for $121,478.86 when loss under the Guidelines was calculated to be $1,091,244.19).

The United States has no other objections to material information, sentencing guideline ranges, or policy statements contained in or omitted from the draft PSR.

Sincerely,

ANNALOU TIROL
Acting Chief, Public Integrity Section

 */s/ James C. Mann*
John D. Keller
Deputy Chief
James C. Mann
Trial Attorney
Public Integrity Section
Criminal Division
United States Department of Justice

cc:  Jason B. Freeman, Esq. (via email)